[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13558

_____

D.C. Docket No. 1:09-cr-20210-JAL-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SIRTAJ "TOSH" MATHAUDA,
a.k.a. Mark Bolan,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(January 21, 2014)

Before CARNES, Chief Judge, WILSON, Circuit Judge, and CORRIGAN,[*]
District Judge.

PER CURIAM:

---

[*] Honorable Timothy J. Corrigan, United States District Judge for the Middle District of
Florida, sitting by designation.

In March 2009, a grand jury in the Southern District of Florida charged

Sirtaj "Tosh" Mathauda with conspiracy to commit mail and wire fraud in

violation of 18 U.S.C. §§ 1349, 2326 (Count 1); mail fraud in violation of 18

U.S.C. §§ 1341, 2326, 2 (Counts 2 through 14); and wire fraud in violation of 18

U.S.C. §§ 1343, 2326, 2 (Counts 15 and 16).  The indictment alleged that

Mathauda and his co-conspirators operated a series of companies that marketed

and sold fraudulent business opportunities, such as the ownership and operation of

vending machines, coffee display racks, and greeting card display racks.  All sales

were made over the phone from a call room in Costa Rica.  A jury ultimately found

Mathauda guilty on all counts presented for consideration,[1] and he was sentenced

to 252 months' imprisonment.  Mathauda now brings a myriad of arguments on

appeal; however, only one of those arguments requires discussion: whether the

district court erred in adding a two-level sentence enhancement for Mathauda's

alleged violation of a prior court order.[2]  We find that the district court did err, and

---

[1] Prior to charging the jury, the district court granted the government's motion to dismiss Counts 3, 7, 9, and 10.

[2] Under the 2012 Guidelines Manual, this provision is now U.S.S.G. § 2B1.1(b)(9)(C). This opinion will refer to the provision as § 2B1.1(b)(8)(C), as that was its designation in the 2010 Guidelines, which apply to this case.

2

thus vacate Mathauda's sentence and remand for resentencing. We affirm all other issues raised in this appeal.[3]

## I. Background

From roughly June 2004 until January 2009, Mathauda ran several sham businesses out of a call room in Costa Rica. He and his co-conspirators worked under a series of company names: Apex Management, USA Beverages, Omega Business Systems, and Nation West. Each company would operate for a few months, taking money from would-be franchisees, and then closing its doors, leaving victims high and dry. According to the indictment, Mathauda would entice his victims as follows: (1) advertise business opportunities in the United States, urging interested people to call certain toll-free U.S. telephone numbers; (2) route those telephone numbers to Costa Rica; (3) connect the interested persons with a "fronter," who would describe the business opportunities and arrange to ship promotional materials to the interested persons; (4) sometimes connect the interested persons with a "reference" or "locator," co-conspirators who would pose as third parties who had made money through one of Mathauda's companies or were in the business of consulting with interested persons on lucrative locations to

---

[3] On appeal, Mathauda also challenges the district court's denial of his motion to dismiss the indictment, whether the evidence was sufficient to prove his guilt beyond a reasonable doubt, whether alleged improper evidentiary rulings, alleged prosecutorial conduct, and other issues resulted in cumulative error, and whether Mathauda's sentence was substantively reasonable. We find these arguments have no merit and thus do not address them in this appeal.

place their vending machines and merchandise racks; and (5) connect the interested persons with a "closer," who would finalize sales and provide instructions for wiring or otherwise transferring funds to the companies as payment for the business opportunities. The purported business opportunities cost thousands of dollars each. In total, Mathauda fraudulently obtained millions of dollars from his victims.

Prior to the commencement of his criminal prosecution, Mathauda and his co-conspirators were the subject of a civil action brought by the Federal Trade Commission (FTC). The FTC filed a complaint in October 2005 alleging that Mathauda and his co-conspirators had violated § 5(a) of the FTC Act, 15 U.S.C. § 45(a)(1), which prohibits "unfair or deceptive acts or practices in or affecting commerce," and the FTC's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising," 16 C.F.R. § 436, which requires sellers of franchises and business opportunities to provide a basic disclosure document detailing, among other things, the names, employment history, and litigation history of the franchisors. *See* 16 C.F.R. § 436.5. The FTC complaint and accompanying paperwork were served on Mathauda on December 18, 2005. In addition to the complaint, Mathauda received a number of other documents, including a copy of a proposed temporary restraining order, a memorandum in support of the temporary restraining order, and an order to show

4

cause.  In response, Mathauda hired an attorney to represent him in the case. Mathauda himself never did anything else and continued to operate his conspiracy. Unbeknownst to Mathauda, his attorney also did nothing about the case, and default judgment was entered on June 27, 2006.

After the jury found Mathauda guilty in the criminal matter, the Probation Office prepared a Presentence Investigation Report (PSI).  Although Mathauda raised various objections to the PSI, the only objection pertinent to our discussion on appeal is his objection to the two-level enhancement based on a knowing violation of a prior, specific judicial order pursuant to U.S.S.G. § 2B1.1(b)(8)(C).[4] Mathauda conceded that he had been served with the FTC complaint and accompanying paperwork, and that he had retained and paid counsel for representation.  However, he did not know his attorney failed to respond, that default judgment was eventually entered, and that he had been judicially ordered to cease his fraudulent activity.  According to Mathauda, he never received the final court order entering the default judgment.  And the government conceded that much.  The government argued, however, that the enhancement was proper because Mathauda was willfully blind to the court's order and that willful blindness to an order constitutes knowledge of the order, rendering any subsequent

---

[4] *See* U.S.S.G. § 2B1.1 cmt. n. 8(C) (requiring knowledge of the prior decree or order).

violation a knowing violation for purposes of § 2B1.1(b)(8)(C).  The district court agreed and overruled Mathauda's objections to the PSI.

## II.    Discussion

On appeal, Mathauda objects to the district court's imposition of a two-level enhancement based on his "violation of [a] prior, specific judicial . . . order." U.S.S.G. § 2B1.1(b)(8)(C).  We review a district court's factual findings at sentencing for clear error.  *See United States v. Lee*, 427 F.3d 881, 892 (11th Cir. 2005).

Mathauda argues that the two-level enhancement was erroneous because he never received the court's order and therefore he did not know that he was in violation of it.  Thus, since the government has failed to prove that Mathauda knew of the order's existence, the enhancement was improper.  The government responds that Mathauda was on notice of the order despite not receiving it because he knew about the civil proceedings and potential consequences he would face should he not respond to the FTC complaint.  Specifically, the government argues that Mathauda should not be able to avoid the consequences of violating the terms of the default judgment issued against him by remaining willfully blind to the outcome of a case of which he was aware.

Whether willful blindness satisfies the knowing requirement of § 2B1.1(b)(8)(C) is an issue of first impression in this circuit.  In *United States v.*

*Bisong*, the United States Court of Appeals for the District of Columbia held that the district court did not err when it applied a sentencing enhancement based on the defendant's violation of a prior court order, despite the defendant's alleged lack of knowledge of the order, because he was willfully blind to the order he violated. 645 F.3d 384, 399–400 (D.C. Cir. 2011).

John Bisong was convicted of seven counts of bank fraud and four counts of immigration fraud. *Id.* at 386. His scheme involved filing over one hundred phony applications for alien labor certifications and subsequently stealing money from alien bank accounts by way of counterfeit checks. *Id.* at 387. The scheme lasted from March 1999–January 2002. *Id.* In 1994, however, an Administrative Law Judge found that Bisong was making misrepresentations in advertisements about his alien assistance activities, and thus ordered him to "cease and desist from engaging in any unlawful trade practices in the District of Columbia." *Id.* at 399 (internal quotation marks omitted). Bisong, however, did not receive the final court order. *Id.* At the sentencing hearing in Bisong's criminal bank fraud and immigration case, the district court judge imposed a two-level enhancement based on Bisong's "'violation of any prior, specific judicial or administrative order, injunction, decree, or process.'" *Id.* (quoting U.S.S.G. § 2B1.1(b)(8)(C)).

Bisong appealed, among other issues, the district court's award of the two-level enhancement under U.S.S.G. § 2B1.1(b)(8)(C). *Id.* at 399. On appeal, the

court agreed that there was overwhelming evidence that Bisong was aware of the civil proceedings against him and that he purposely avoided learning more about the case. *Id.* at 399–400. Relying heavily on the fact that Bisong attended the first day of the administrative hearing, requested and was granted a continuance, and then failed to show up for the rescheduled hearing, the court found that Bisong was "willfully blind" to the prior court order. *Id.* at 399–400. The court stated that "the district court could reasonably infer, for it had observed that Bisong was an intelligent man, that, based on a preponderance of the evidence, Bisong realized the high probability that an order would issue." *Id.* at 400. Thus, despite never receiving the prior judicial order, the two-level enhancement was still proper because Bisong knew enough about the civil proceedings and that a final order was inevitable. *Id.*

We agree with the United States Court of Appeals for the District of Columbia Circuit that there are "two predominant formulations of 'willful blindness': when a defendant purposely contrived to avoid learning all the facts, or the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Id.* (internal quotation marks and brackets omitted). We adopt this same standard here today, and when applied to the case at hand, the government failed to prove by a preponderance of the evidence that Mathauda was willfully blind to the court's final order against him.

Accordingly, it was clear error for the district court to apply the two-level enhancement for violation of a prior judicial order.

It is true that Mathauda admitted that he received the FTC complaint and accompanying paperwork.  It is also true that Mathauda admitted to retaining an attorney in the matter.  But that is all.  He did not appear in court, and as far as Mathauda knew, his attorney was handling the matter.  His attorney, however, did not file a single document in response to the FTC complaint.  Accordingly, because no one responded on Mathauda's behalf, default judgment was entered.  The final order was never served on Mathauda, and Mathauda never heard anything more about the case until his sentencing in the current matter, when he was awarded a two-level enhancement because he violated an order he never actually received from a case his attorney presumably should have handled.

The government attempts to analogize this case to *Bisong*.  While there are some similarities, the differences are far more important.  Unlike Bisong, Mathauda was not an active participant in the FTC proceedings.  He was served with the complaint, and he hired an attorney.  That was all.  Bisong, in contrast, appeared at the first day of the proceedings against him, personally called to request a continuance, and then failed to show up for the continued hearing.  *Id.* We do not have that level of active participation in Mathauda's case, which would have created a "high probability" in Mathauda's mind that an order would issue.

9

*See id.* at 400.  Nor do we have evidence that Mathauda failed to appear at a hearing date he requested, which would demonstrate purposely avoiding learning all the facts.  *See id.* at 399–400.

This is not to say that the defendant who does nothing will never be found "willfully blind."  But the burden is on the government to prove by a preponderance of the evidence that the "defendant purposely contrived to avoid learning all the facts, or the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact."  *Id.* (internal quotation marks and brackets omitted).  The government failed to do that here.  We thus vacate Mathauda's sentence and remand for resentencing.  We affirm on all other issues raised in this appeal.

**AFFIRMED IN PART, AND VACATED AND REMANDED IN PART.**